THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
J. R. JENKINS, Defendant-Appellant.

First District (1st Division)  No. 79-1897

Opinion filed February 22, 1982.

James J. Doherty, Public Defender, of Chicago (Robert Guch and John Kalnins, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and David A. Stoioff, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

On September 27, 1975, Thaddeus Jenkins, son of defendant J. R. Jenkins, died of a gunshot wound. Defendant was indicted for crimes allegedly committed to avenge the death of his son. After a jury trial, defendant was found guilty of solicitation of Barry Smoot to murder Robert Osborne, solicitation of Barry Smoot to murder Kenneth King, conspiracy, attempt murder and aggravated battery. Defendant was sentenced to the Illinois Department of Corrections to serve concurrent terms of 7 years for conspiracy, 10 years for attempt murder, and 10 years for each count of solicitation. Defendant appeals.

On appeal, defendant contends (1) he was denied his right to confront witnesses; (2) the grand jury testimony of a State's witness was highly suspect; (3) he was not proved guilty beyond a reasonable doubt; and (4) his conspiracy conviction should be reversed because it is a lesser included offense of attempt murder.

Douglas Iseminger testified that on September 27, 1975, he met Thaddeus Jenkins in a parking lot. He gave Jenkins $400 with which Jenkins was to buy marijuana. Thaddeus was accompanied by Robert Osborne who knew where the marijuana was to be purchased. Later that day, the body of Thaddeus Jenkins was found in a car in a ditch off the side of a road in Will County. Thaddeus had been shot and died as a result of the gunshot wound.

Patrick Barry, a Will County sheriff's deputy, ascertained that defendant J. R. Jenkins was the owner of the auto in which Thaddeus Jenkins was found. He testified that he informed defendant of the death of his son. While talking with defendant, Barry learned that Thaddeus had been cooperating with police in a drug investigation and that Thaddeus had feared for his life. Barry further testified that Robert Osborne had been charged with the murder of Thaddeus Jenkins.

Roy Anderson, a Will County sheriff's deputy, testified at the coroner's inquest into the death of Thaddeus. At the trial below, he testified that defendant attended the inquest. Anderson read that portion of the inquest transcript wherein defendant asked if private citizens had to take the law into their own hands and apprehend criminals.

The State also called Ira Goldstein as a witness. In 1975 Goldstein was an assistant State's Attorney in Will County. He testified that within one week of the dismissal of the murder charge against Robert Osborne, defendant came to the State's Attorney's office and spoke to the chief felony assistant. Goldstein heard defendant speaking loudly and entered the room in which defendant and the assistant were meeting. He

recounted defendant's statements that "someone should put a bomb in the Will County Courthouse" and that "if the State's Attorney's office * * * isn't going to do anything about this, I will."

Barry Smoot was also called as a witness by the State. He testified that in 1975, he worked with defendant. He recalled firing a gun through a door of a home in Calumet City in 1975 and stated that defendant, prior to the incident, had pointed out the house to him. He further testified that Thomas Young[1] was with him when the shooting occurred. Smoot recalled testifying before the grand jury in 1977. However, Smoot could not recall whom he intended to shoot, whether Young had fired any shots, whether anyone was injured by the shots he fired, where he went after the incident, how long he had known defendant, or whether he spoke with defendant after the incident.

After the unsuccessful attempts to elicit testimony from Smoot, the State requested that Smoot be called as a court's witness. The trial court heard arguments on this point and granted the State's request. The court based its decision on its observation of Smoot's demeanor and Smoot's ability to recall some facts and not others. The court concluded that Smoot was "trying to foster off a sham" on the court.

The State resumed its examination of Smoot. Each time Smoot was unable to recall a fact, the State read the transcript of the grand jury proceeding concerning that matter. Occasionally, the statement Smoot gave police was also read. The evidence elicited via this procedure was that Smoot had known defendant since 1973. On October 1975, defendant asked Smoot to murder Robert Osborne, whom defendant believed was responsible for the murder of his son. To accomplish the deed, defendant gave Smoot a pistol, a .44 magnum, and a machine gun. Smoot gave the latter two weapons to his brother. Defendant paid Smoot $1600 to kill Osborne and Smoot, in turn, paid Young $250 to assist him. After the shooting occurred, defendant met Smoot at work and told him James, rather than Robert Osborne, had been shot and asked Smoot to try again to murder Robert Osborne. Defendant also had asked Smoot to kill Kenneth King.

First, defendant contends he was denied the right to confront witnesses against him where the trial court admitted into evidence the grand jury testimony of Barry Smoot. He maintains that said testimony was inadmissible because he had no opportunity to cross-examine Smoot during the grand jury proceedings. Defendant further maintains that the testimony was inadmissible as substantive evidence.

The primary purpose of the confrontation clause is to assure that the trier of fact has a satisfactory basis for evaluating the truth of testimony.

---

[1] Thomas Young was also indicted for crimes arising from this incident and was tried simultaneously with defendant Jenkins. Young was found not guilty.

(*United States ex rel. Thomas v. Sielaff* (S.D. Ill. 1975), 404 F. Supp. 1037, *aff'd* (7th Cir. 1976), 539 F.2d 715.) Stated differently, the issue under the confrontation clause is whether the jury has been made aware of adequate factors to determine the witness' credibility. *People v. Hines* (1981), 94 Ill. App. 3d 1041, 419 N.E.2d 420, citing *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, and *Thomas v. Cardwell* (9th Cir. 1980), 626 F.2d 1375.

■■ In the present case, defendant was afforded the opportunity to cross-examine Smoot and challenge his credibility. Smoot was questioned at length about the length of time police held him in custody and the procedures employed in questioning him. Defendant inquired about Smoot's heroin addiction in the years in question, and Smoot admitted using heroin at the time of the occurrence. During defendant's examination of Smoot, Smoot admitted he was offered leniency when questioned by police. He also admitted receiving immunity from prosecution in return for his testimony before the grand jury. Thus, we find the jury was presented with various factors upon which to judge Smoot's credibility and conclude defendant's confrontation rights were not violated.

The fact that defendant was not present and had no opportunity to cross-examine Smoot at the grand jury hearing does not prohibit the use of his grand jury testimony at the trial. In *United States v. Insana* (2d Cir. 1970), 423 F.2d 1165, *cert. denied* (1970), 400 U.S. 841, 27 L. Ed. 2d 76, 91 S. Ct. 83, a government witness consistently claimed lack of memory during trial. The government's request that the witness be declared hostile was granted and the court permitted the government to lead the witness and impeach his lack of memory by the use of his grand jury testimony. The court of appeals rejected defendant's contention that the witness' claimed lack of memory prohibited effective cross-examination regarding the extrajudicial statements. The court reasoned that the witness was present in court and subject to cross-examination there. Similarly, in this case at bar, Smoot was present at trial and subject to cross-examination. As noted previously in this opinion, defendant conducted a detailed and thorough examination.

We further find that the trial court did not err in admitting into evidence Smoot's grand jury testimony. As noted in *United States v. Insana*:

"[T]he trial judge's hands should not be tied where a witness does not deny making the statements nor the truth thereof but merely falsifies a lack of memory. Here [the witness] had testified in detail before the grand jury, * * * and on the stand identified [defendant] and testified to * * * relevant events. Based upon these facts, the only rational conclusion is that [the witness] was fully aware of the content of his grand jury testimony but wished to escape

testifying against [defendant] and thus make a mockery of the trial. By conceding that his lack of memory was due to his desire not to hurt anyone, he impliedly admitted the truth of the extrajudicial statements harmful to the defendant. Thus we believe that these statements are admissible not only to impeach his claim of lack of memory but also as an implied affirmation of the truth." 423 F.2d 1165, 1170.

■■ In this case, Smoot admitted testifying before the grand jury under oath and never denied the truthfulness of his testimony. He impliedly admitted the truth of the extrajudicial statements by repeatedly saying the statements must have reflected the truth as remembered by him at that time. Thus his grand jury testimony was admissible.

■■ Second, defendant contends the grand jury testimony of Smoot was highly suspect because Smoot was a drug addict and had been granted immunity in return for his testimony. However, the credibility of witnesses is left to determination by the trier of fact. (*People v. Flores* (1979), 79 Ill. App. 3d 869, 398 N.E.2d 1132.) Here, the jury had the opportunity to observe Smoot and heard the evidence regarding Smoot's drug use and immunity from prosecution. We should not substitute our judgment regarding Smoot's credibility for that of the jury. *People v. Escobar* (1979), 77 Ill. App. 3d 169, 395 N.E.2d 1028; *People v. McNair* (1979), 71 Ill. App. 3d 782, 390 N.E.2d 142.

Third, defendant contends he was not proved guilty beyond a reasonable doubt. He specifically argues that additional, more damaging evidence was presented against Young and that in light of Young's acquittal, a reasonable doubt exists as to his guilt.

■■ First, we note that Smoot's grand jury testimony regarding the defendant's degree of involvement differed substantially from that regarding Young's participation. We further recognize that other evidence, namely a statement purportedly given by Young to police and Young's testimony at a prior hearing, was introduced by the State against Young. Thus, the evidence against the co-defendant differed and the failure to convict one does not raise a reasonable doubt of guilt as to the other. (*People v. Brown* (1977), 47 Ill. App. 3d 920, 365 N.E.2d 514; *People v. Boyce* (1976), 41 Ill. App. 3d 53, 353 N.E.2d 287.) Furthermore, Young took the stand and refuted the evidence against him. It was the function of the jury to determine his credibility and the credibility of the witnesses against him and we will not usurp this function.

Fourth, defendant contends that conspiracy is a lesser included offense of attempt murder and that his conspiracy conviction should therefore be reversed.

In *People v. Smith* (1980), 78 Ill. 2d 298, 306, 399 N.E.2d 1289, 1294, the court stated:

"An included offense is defined by statute as an offense which '(a) [i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or (b) [c]onsists of an attempt to commit the offense charged or an offense included therein.' (Ill. Rev. Stat. 1975, ch. 38, par. 2—9.) In order to be classified as a lesser included offense, 'all the elements of the lesser must be included within the greater.' *People v. King* (1966), 34 Ill. 2d 199, 200."

■■ The elements of conspiracy are (1) the intent to commit an offense (2) an agreement with another to commit that offense, and (3) an act by one of the co-conspirators in furtherance of the agreement. (Ill. Rev. Stat. 1979, ch. 38, par. 8—2(a).) The crime of attempt murder requires proof of (1) intent to commit an offense and (2) a substantial step towards the commission of that offense. (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(a).) In comparing the necessary elements of proof for these offenses, it is clear that conspiracy is not a lesser included offense of attempt murder because conspiracy requires proof of an additional element, namely an agreement with another to commit an offense. We therefore find defendant's final contention to be without merit.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG and O'CONNOR, JJ., concur.