THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEY ADAMS, Defendant-Appellant.

First District (5th Division)   No. 1—94—4460

Opinion filed May 24, 1996.—Rehearing denied June 26, 1996.

Rita A. Fry, Public Defender, of Chicago (Todd Avery Shanker, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COUSINS delivered the opinion of the court:

Following a jury trial, defendant Stevey Adams (Adams) was convicted of two counts of aggravated battery and one count of armed violence. The trial court sentenced Adams to 10 years' imprisonment for armed violence and five years' concurrent imprisonment for two counts of aggravated battery. On appeal, Adams argues that: (1) the trial court abused its discretion by allowing into evidence for impeachment purposes Adams' prior convictions for aggravated battery; (2) the prosecution's closing argument denied Adams a fair trial; (3) the trial court erred by not specifying in the jury instructions which form of aggravated battery was serving as the predicate offense for armed violence; and (4) Adams' two aggravated battery convictions must be vacated because the convictions were based on the same act constituting the basis for his armed violence conviction, violating one-act-one-crime principles.

BACKGROUND

On October 23, 1992, John Lighthall (Lighthall) was injured in a fight at the Play House nightclub in Forest Park, Illinois. Adams was charged by information with one count of attempted first degree murder, two counts of aggravated battery and one count of armed violence. Prior to trial, Adams' counsel made a motion *in limine* to

prevent the State from using Adams' prior convictions for aggravated battery and possession of a controlled substance as impeachment against him. The trial court denied the motion.

At trial, Lighthall testified that on October 23, 1992, he was working as a bouncer at the Play House nightclub. When Lighthall began working that evening, he was stationed at the front door. He began floating around the bar at approximately 12:45 a.m., when he received complaints from women that they were being harassed while going into the washroom. Lighthall then went to the women's washroom, where he observed Adams and his brother, Frank, blocking the women's washroom, harassing and touching the women going into the washroom. Lighthall approached Stevey and Frank and asked them to leave the area of the women's washroom and sit elsewhere. Frank then stated, "Punk, don't you know you can get killed messing with us tonight. Don't mess with me tonight." Lighthall grabbed Frank's hand and escorted him through the crowd to the front door. While walking away, Lighthall heard Stevey yell "ready." Lighthall turned around and Stevey punched him directly in the left eye. Stevey and Frank began to beat Lighthall with their fists, pitchers and beer bottles. After the fight, Lighthall was transported to Loyola University Medical Center emergency room for treatment.

On cross-examination, Lighthall testified that he thought Stevey had hit him with two beer bottles and Frank also hit him with two beer bottles. He admitted, however, that he testified at the preliminary hearing that Frank hit him with four bottles. He admitted that he was dividing up the four bottles between Stevey and Frank for the first time at trial.

Officer Anthony Thomas testified that he was off duty at the Play House nightclub on the day of the incident. He observed the fight between Lighthall, Frank and Stevey from approximately 50 to 75 feet away. Officer Thomas observed Stevey and Frank standing over Lighthall, hitting him and grabbing bottles and pitchers from the table and hitting him with those objects two or three times. Lighthall's shirt was pulled up to his shoulder blades. He was slouched over and face down. Officer Thomas saw Stevey pick up a beer pitcher from the table and break the pitcher over Lighthall's head. Stevey then cut Lighthall with the broken pitcher in the shoulder area. Frank and Stevey then pushed their way through the crowd and out the door. Officer Thomas stated that he assisted Lighthall, who was lying on the ground with a severe cut to the left side of his shoulder. When the police arrived, Officer Thomas gave them a general description of Stevey and Frank.

On cross-examination, Officer Thomas testified that he knew

Stevey because he had arrested him before. He stated that he did not see the whole fight, but he did observe Stevey pulling Lighthall's shirt over his body and he saw Stevey hitting Lighthall with a pitcher two times. On redirect, Officer Thomas testified that there was nothing obstructing his view while he observed the fight.

Officer Karl Watson testified that he responded to a radio call of a fight in progress at the Play House nightclub. When he arrived, he obtained Frank's and Stevey's names from Officer Thomas. He communicated this information to the Oak Park, River Forest and Forest Park police departments. Officer Daniel Dhooghe testified that, on the night in question, he was in an unmarked car and dressed in plain clothes. At approximately 12:50 a.m., he received a radio broadcast reporting an occurrence of an aggravated battery at the nightclub. The broadcast provided Officer Dhooghe with Frank's and Stevey's names and gave their descriptions. While on patrol, Officer Dhooghe observed a vehicle without headlights being driven away from the area of the Play House nightclub. Officer Dhooghe pulled the vehicle over. When Officer Dhooghe asked Stevey for a driver's license, Stevey stated that he did not have one. Stevey told Officer Dhooghe his name, and Officer Dhooghe noticed Frank was bleeding from his hand. The officer took Stevey and Frank Adams into custody.

Dr. Robert Johnson testified that he was employed at Loyola University Medical Center. He stated that Lighthall had a stab wound in his left shoulder approximately nine inches long and one inch deep. Lighthall also suffered a black eye, two superficial lacerations to the head and one superficial laceration to the right forearm.

The defendant then made a motion for a directed verdict on the attempted first degree murder charge and the aggravated battery charges, which the trial court denied. The defense then presented its case in chief.

Stevey testified on his own behalf. He stated that on October 23, 1992, he and Frank were in the Play House nightclub. At approximately 12:45 a.m., they were talking with some male and female friends near the washrooms. He denied that they touched or harassed any of the women going into the washroom. Stevey testified that Lighthall told Frank to get away from the washroom and grabbed Frank by the throat. Frank knocked Lighthall's hand down with his hand, and Stevey walked over to Lighthall and said "John, we ain't here to start no trouble or anything like that, you know. We are just here to have a good time." Stevey put his arm around Lighthall and assured him that there were no problems. After talking to Stevey, Lighthall ran back over to Frank and grabbed him by the neck again. Stevey tried to break up the fight. Lighthall pushed

Stevey and punched him in his ear. Stevey stated that while he and Lighthall were fighting, Frank came from behind and hit Lighthall over the head with a beer bottle. When the bottle broke, Frank cut Lighthall across his back. Frank cut his own hand while he was hitting Lighthall with the shattered beer bottle. While Frank hit Lighthall with the bottle, Stevey punched Lighthall. Stevey denied ever calling out "ready" and denied ever hitting Lighthall with any bottle or pitcher. He also denied ever hearing Frank call out "if you mess with me you're going to be killed." After Lighthall fell to the floor, Stevey and Frank left the nightclub.

On cross-examination, Stevey testified that he did not try to stop Frank from hitting Lighthall with the bottles. He stated that he and Frank ran from the club because they did not want to be there when the police arrived. On redirect, Stevey stated that he never encouraged Frank to hit Lighthall with the bottle, nor did he tell him to kill Lighthall.

Sedrick Hicks testified that he is a cook at the nightclub and he has known Stevey for 12 years. Hicks heard a commotion in the lounge and left the kitchen to see what was going on. He stated that he saw Frank hit Lighthall twice with a bottle. Hicks stated that he arrived near the end of the fight, when Lighthall was already on the floor.

Camille Corbert testified that she had known Stevey for 10 years. She testified that she was at the nightclub on October 23, 1992. She observed Stevey and Lighthall fighting and hitting each other with their fists. She then saw Frank come from behind and hit Lighthall on the back of the neck with a beer bottle, which broke after "three licks." She stated that she never saw Stevey hit Lighthall with any kind of bottle or pitcher. Corbert testified that Stevey looked surprised when Frank hit Lighthall with the bottle. On cross-examination, Corbert stated that Stevey is a friend and admitted that she did not see the beginning of the fight. She left the nightclub after she saw Frank hit Lighthall in the back of the head.

In rebuttal, the State introduced certified copies of convictions against Stevey Adams for two aggravated batteries in 1986 and one possession of a controlled substance in 1994. After deliberations, the jury found Stevey not guilty of attempted murder, guilty of armed violence, and guilty of two counts of aggravated battery. The judge denied Adams' motion for new trial and sentenced him to 10 years' imprisonment. Adams appealed. We reverse and remand for a new trial.

ANALYSIS
■ Stevey Adams first contends that the trial court abused its

discretion by allowing into evidence his prior convictions to impeach him. The seminal case on the issue of the admittance of prior convictions is *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971). In *Montgomery*, our supreme court took notice of a proposed federal rule, a revised version of which was later adopted as Federal Rule of Evidence 609 (Fed. R. Evid. 609), concerning impeachment of evidence by prior convictions. *Montgomery*, 47 Ill. 2d at 519. "The rule provided that for the purpose of attacking the credibility of a witness, evidence of a prior conviction is admissible only if the crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment unless, in either case, the judge determines that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *People v. Williams*, 161 Ill. 2d 1, 36, 641 N.E.2d 296 (1994).

*Montgomery* set forth factors for the trial court to consider in making its determination, such as the nature of the crime, nearness or remoteness, the subsequent career of the person, and whether the crime was similar to the one charged. *Montgomery*, 47 Ill. 2d at 517-18. Recently, our supreme court in *People v. Williams*, 161 Ill. 2d 1, 641 N.E.2d 296, examined the original rationale of the *Montgomery* rule and wrote: "[A] review of case law since *Montgomery* reveals a regression toward allowing the State to introduce evidence of virtually all types of felony convictions for the purported reason of impeaching a testifying defendant." *Williams*, 161 Ill. 2d at 38-39.

*Williams* is instructive. There, the court further wrote:

"In our view, the increasingly mechanical application of these premises does not comport with the principles expressed in *Montgomery*, or in the authorities on which the *Montgomery* court relied in adopting Rule 609 as the rule to be applied in this State. Arguably, all criminal conduct, from the most serious felony to misdemeanors such as reckless or disorderly conduct, criminal trespass, resisting a peace officer, and numerous others, evinces a disrespect for society. The *Montgomery* rule does not, however, allow for the admission of evidence of any and all prior crimes. The focus of *Montgomery* was on crimes which bear upon the defendant's truthfulness as a witness.

\* \* \*

We do not hold that there are no circumstances under which a voluntary manslaughter conviction may be admitted at a murder trial. However, we fail to see the relationship required by *Montgomery* between defendant's conviction and his testimonial credibility in this case. Rather, it clearly appears that the conviction was offered and admitted as relevant to the question of defendant's guilt of Valerie's murder. Such purpose contravenes

the principles articulated in *Montgomery*. So long as the *Montgomery* rule remains the law in this State, we cannot countenance its further erosion." *Williams*, 161 Ill. 2d at 39-41.

■ In weighing the *Montgomery* factors, we fail to see much relevance regarding Adams' prior convictions and his testimonial credibility in the instant case. Prior to trial, defense counsel sought to prevent the State from using Adams' prior convictions for aggravated battery and possession of controlled substance as impeachment evidence. Defense counsel argued that these convictions were highly prejudicial and not probative of Adams' credibility, especially since he was charged with attempted murder, armed violence and aggravated battery. After hearing the defense's argument, the trial court commented: "What I believe [is that] these type of charges, felony convictions of this defendant are probative and really more probative than prejudicial." We disagree. The defendant in the instant case was charged, *inter alia*, with aggravated battery. In our view, the probative value relating to credibility was minimal by comparison with the prejudice due to the admission of the prior aggravated battery convictions.

The State argues, however, that any error in using such impeachment evidence was harmless because of the overwhelming evidence of his guilt. We disagree. Adams was convicted of the crimes charged based on an accountability theory. If the jury believed Adams' testimony that he never wielded any weapon, but only punched the bouncer, it could have acquitted him if it did not find him accountable for his brother's actions. The admission of the prior convictions could have persuaded the jury that "if he did it before[,] he probably did so this time." *Williams*, 161 Ill. 2d at 38. Therefore, under the rationale of *Montgomery* and *Williams*, Adams' convictions for aggravated battery and possession of a controlled substance were improperly admitted at trial.

■ Adams next contends that the prosecutor's closing argument shifted the burden of proof to the defense. It is well settled that the prosecution has the burden of proving beyond a reasonable doubt all the material and essential facts constituting a crime committed by an accused. *People v. Lopez*, 152 Ill. App. 3d 667, 677, 504 N.E.2d 862 (1987). Although the prosecutor is allowed a great deal of latitude in making his opening statement and closing argument, improper argument by the prosecution shifting the burden of proof to a defendant constitutes reversible error, notwithstanding the fact that the jury is otherwise properly instructed on the burden of proof. *People v. Yonker*, 256 Ill. App. 3d 795, 798, 628 N.E.2d 1124 (1993); *Lopez*, 152 Ill. App. 3d at 677. Whether a prosecutor's comments or arguments con-

stitute prejudicial error is evaluated according to the language used, its relation to the evidence, and the effect of the argument on the defendant's right to a fair and impartial trial. *People v. Pasch*, 152 Ill. 2d 133, 184, 604 N.E.2d 294 (1992). A prosecutor has the right to comment on the evidence, draw all legitimate inferences deducible from the evidence even if they are unfavorable to defendant, and comment on the credibility of the witnesses. *People v. Gutierrez*, 239 Ill. App. 3d 536, 541, 605 N.E.2d 1110 (1992). A verdict must not be disturbed unless the improper remarks resulted in substantial prejudice to the defense through improper comments. *Yonker*, 256 Ill. App. 3d at 798.

■ During closing argument in this case, the prosecutor told the jury: "Don't give the Defendant the benefit of a doubt in the situation—." The defense's objection to this statement was overruled. We believe this statement clearly shifted the burden of proof to Adams. The State argues that this comment did not shift the burden, but instead related to Adams' credibility. However, there is a vast difference between an allegation by the prosecution that a defendant did not prove himself innocent and statements questioning the relevance or credibility of a defendant's case. *People v. Brooks*, 246 Ill. App. 3d 777, 789, 619 N.E.2d 1271 (1993). Notwithstanding the instruction on the burden of proof, we believe that a reasonable jury could interpret the comment to mean that Adams was not entitled to the benefit of that burden of proof. Therefore, the effect of the prosecutor's improper closing argument denied Adams his constitutional right to a fair and impartial trial.

Defendant also contends that the conviction for armed violence constitutes an impermissible double enhancement. However, because of our view that the judgment of conviction should be reversed and remanded for the reasons cited herein, we do not reach the double enhancement issue.

For the reasons cited herein, the judgment of the circuit court of Cook County is reversed and remanded.

Reversed and remanded.

GORDON and HOURIHANE, JJ., concur.