THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN R. PAUL, Defendant-Appellant.

Fifth District    No. 5—96—0418

Opinion filed April 22, 1999.

KUEHN, J., specially concurring.

Daniel M. Kirwan and Edwin J. Anderson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William R. Haine, State's Attorney, of Edwardsville (Norbert J. Goetten and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert E. Davison, of Springfield, for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Following a jury trial in the circuit court of Madison County, defendant, Kevin R. Paul, was found guilty of armed robbery (720 ILCS 5/18—2(a) (West 1994)) and was sentenced to 22 years' imprisonment. Defendant appeals his conviction, contending that (1) he was not proven guilty beyond a reasonable doubt, (2) the trial court erred in restricting the impeachment of a key State witness with evidence of his prior convictions, when the court ordered the use of the mere-fact impeachment method, (3) his right to a fair trial was violated by the State's improper closing argument, and (4) the trial court erred in re-

fusing to order a fitness hearing where defense counsel informed the court that defendant had been taking psychotropic drugs prior to trial. For the following reasons, we reverse and remand.

## I. FACTS AND PROCEDURAL HISTORY

Defendant, defendant's brother Leslie Paul, and James Hill were all charged with the February 4, 1995, armed robbery of the Hamp's Quickway Store (Hamp's) in Glen Carbon.

Prior to trial, both defendant and the State made motions *in limine*. Defendant sought to prevent the State from being able to impeach him with evidence of his prior convictions, and the State wanted to limit defendant's ability to impeach its main witness, James Hill, with evidence of his prior convictions. The trial court indicated that it would allow "mere fact" impeachment of both defendant and Hill, with the exception that the jury could learn that Hill had pleaded guilty to armed robbery in this case.

The evidence at trial, viewed in the light most favorable to the prosecution (see *People v. Digirolamo*, 179 Ill. 2d 24, 43, 688 N.E.2d 116, 124 (1997)), revealed the following. On February 4, 1995, Josephine Evans was working as a clerk at Hamp's. At approximately 8 p.m., a man wearing a ski mask entered Hamp's, pointed a gun at Evans, and demanded money from the cash register. Evans complied with the command and put about $200 in a McDonald's bag that the masked man had given her. The robber told her to lie on the ground, and then he ran out the door.

Barry Bushong testified that on February 4, 1995, around 8 p.m., he saw a car traveling down Collinsville Street without any headlights on and that the car eventually stopped behind Hamp's. He saw a man wearing a ski mask run out of Hamp's and jump into the car. The masked man, whom Bushong described as "average size," got into the front seat of the vehicle. When the car's dome light went on, Bushong saw a white male wearing a baseball cap driving the car. As the car sped away, Bushong obtained the license plate number. He noticed only two people in the car. Bushong went into Hamp's and learned that the store had been robbed.

Glen Carbon police officer Melissa Jackson checked the license plate number and determined that the car was registered to James Hill of East Alton. Thereafter, the East Alton police were notified. East Alton police officer Michael Rexford went to Hill's residence, looking for the blue Pontiac Grand Am. The vehicle was not there. Rexford waited for the automobile to arrive. After identifying the blue Pontiac Grand Am, Rexford made a traffic stop of the vehicle and arrested James Hill (the driver), Leslie Paul (the front seat passenger),

and defendant (the backseat passenger). While searching the vehicle, Rexford found a stocking cap and brown gloves in the front seat, a pile of clothes behind the driver's seat, and a BB gun under the backseat. Evans identified the ski mask and the BB gun taken from the car.

Hill testified that at the time of his testimony he was serving 10 years in prison for armed robbery in connection with this case. He also testified that he was awaiting sentencing on two other Class X felonies. He acknowledged that he had five other unnamed prior felony convictions.

Hill further testified that on February 4, 1995, defendant and Leslie Paul had been staying with him. Hill, Leslie Paul, and defendant contemplated committing an armed robbery at Hamp's to obtain money for heroin. Subsequently, the three men drove to Hamp's, and defendant got out of the car. Defendant was wearing a stocking mask pulled over his face. Leslie Paul was ducking down in the backseat so it looked like Hill was driving by himself. Leslie Paul did not go into Hamp's because he has a limp, he knew the clerk, and he thought that the clerk would detect his identity from his limp. Hill drove down the street, turned around, and came back. Defendant ran out of the store and jumped into the car. Defendant wiped off the BB gun with the gloves he was wearing and handed it to Leslie Paul, who was sitting in the backseat.

The three men drove to East St. Louis and acquired drugs with the $200 defendant had stolen. They used the drugs in a McDonald's parking lot in Collinsville. Leslie Paul got in the front seat to inject Hill with the heroin, since Hill could not do it himself. They had been using heroin and smoking crack cocaine since noon that day.

They all tried on the stocking hat. Hill identified the items of clothing and the containers of drugs seized from the automobile. Hill admitted that he was addicted to heroin at the time of the arrest.

Hill provided the police with information regarding this case because he wanted to tell the truth and to cooperate. He also admitted that his February 7, 1995, police statement did not state that defendant had planned and decided to commit the robbery. He conceded that the sentence he received in this case was a good deal considering his criminal history. He stated that he did not receive any promises in exchange for his testimony. Hill also acknowledged that in 1990 he and Leslie Paul had been arrested for a crime and that he implicated Leslie Paul in connection with that crime.

Officer Jackson further testified that neither Evans nor Bushong could identify anyone in a lineup. However, Bushong had thought that Hill looked like the driver. Defendant had never been in a lineup.

Susan Kidd, a State Police forensics examiner, performed tests on

the five hairs recovered from the ski cap. She tested and compared the hairs found on the ski cap to hair samples from Leslie Paul and defendant. Of the five hairs found on the ski cap, Kidd determined that four could have come from Leslie Paul and one could not have come from Leslie Paul. Kidd did not have enough of a sample of defendant's hair to determine whether defendant could have been a source of the last hair sample. Kidd did not perform a test on a sample of Hill's hair. Duane Abrams, a state forensics examiner, testified that heroin and cocaine were found in the containers recovered from the automobile.

The parties stipulated that Leslie Paul's fingerprints were the only fingerprints found on the BB gun. The State rested its case. Immediately afterward, defendant rested his case without presenting any testimony.

The jury found defendant guilty of armed robbery, and defendant now appeals.

## II. ANALYSIS

Defendant asserts that the trial court erred when it allowed the State's main witness, James Hill, to be impeached by the mere-fact-impeachment method. Specifically, defendant contends that the court erred in limiting the references to Hill's convictions to "felony convictions" rather than to the specific type of felony, which would have had more relevancy to and impact on Hill's credibility where the State's entire case rested on the testimony of Hill. We agree.

■ The impeachment test adopted in *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971), allows the use of evidence of prior convictions for impeachment if the crimes were punishable by death or more than one year of imprisonment or involved dishonesty or false statement regardless of the punishment, and the test allows the use of the prior convictions in either case if the court determines that the evidence's probative value outweighs its prejudicial value. *Montgomery*, 47 Ill. 2d at 517, 268 N.E.2d at 699. Additionally, the crime cannot be more than 10 years old. *Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698. The supreme court reviewed and reiterated its ruling in *Montgomery* in *People v. Williams*, 161 Ill. 2d 1, 641 N.E.2d 296 (1994), and again in *People v. Williams*, 173 Ill. 2d 48, 670 N.E.2d 638 (1996). The supreme court stated that prior convictions should not be indiscriminately admitted and that it was critical that the balancing test mandated by *Montgomery* be applied. *Williams*, 173 Ill. 2d at 81-82, 670 N.E.2d at 654-55.

■ There is no specific format for conducting the balancing test, but, essentially, the record should reflect that the court understood it had discretion to admit the prior convictions for impeachment and

that it considered the relevant factors involved. *People v. Elliot,* 274 Ill. App. 3d 901, 911-12, 654 N.E.2d 636, 644 (1995). The factors to be considered include the nature of the prior crime, its proximity or remoteness in time, the subsequent career of the person, and whether the crime was similar to the one charged. *People v. Adams,* 281 Ill. App. 3d 339, 344, 666 N.E.2d 769, 772 (1996).

In this case, the trial court ruled that defendant could be impeached by using the mere-fact-impeachment method. The trial court stated as follows:

> "The Court has followed Justice Steigmann of the Fourth District as to impeachment[ ] [w]here an offense is admissible under *Montgomery* but may be highly prejudicial, and the Court would follow that in this case. The Defendant, Mr. Paul, may be impeached by the fact that he has a prior felony conviction. The jury will not be allowed to hear what that conviction was for."

Subsequently, the State requested that Justice Steigmann's analysis apply to Hill as well. The trial court held, "That will apply in this case to Mr. Hill, except for this armed robbery that he has pled guilty to, the same one that Mr. Paul is charged with." This issue was revisited again before Hill testified. The trial court stated to defense counsel: "Well[,] you have gotten seven or eight convictions to use against him. I don't think that the Court is restricting you very much in going after Mr. Hill."

■ The trial judge was following the special concurring opinions of Justice Steigmann in *People v. Kunze,* 193 Ill. App. 3d 708, 728-36, 550 N.E.2d 284, 297-303 (1990), *People v. Bramlett,* 276 Ill. App. 3d 201, 208-09, 658 N.E.2d 510, 515 (1995), and *People v. Jennings,* 279 Ill. App. 3d 406, 414-15, 664 N.E.2d 699, 705 (1996), which suggest that a rule be adopted which would permit a trial judge to limit the proof of previous convictions to the fact that a defendant or a witness had previously been convicted of a felony without informing the jury of what particular felony.

This suggestion in the special concurring opinions has been rejected by both the Second and First District Appellate Courts in *People v. Thomas,* 220 Ill. App. 3d 110, 117-18, 580 N.E.2d 1353, 1359 (1991), and *People v. Chambers,* 258 Ill. App. 3d 73, 92, 629 N.E.2d 606, 620 (1994), respectively.

In *Thomas,* the court ruled:

> "[The mere[-]fact approach of impeachment] is not the rule in Illinois, and, as Justice Steigmann concluded in *Kunze* in his discussion of the approach, adoption of such a rule should emanate from

our Supreme Court." *Thomas*, 220 Ill. App. 3d at 118, 580 N.E.2d at 1359.

We join the views expressed in both *Thomas* and *Chambers*.

In 1991, Hill was convicted of theft over $150, and in 1995, he was convicted of at least three offenses of armed robbery. The jury only heard evidence that he was convicted of armed robbery in this case and that he was awaiting sentencing on two other Class X felonies. "Theft[-]related offenses obviously involve dishonesty and arguably reflect on a person's likelihood of telling the truth when testifying as a witness." *People v. Wright*, 51 Ill. App. 3d 461, 463, 366 N.E.2d 1058, 1060 (1977). Burglary, for example, has been treated as a crime of dishonesty. *People v. Burba*, 134 Ill. App. 3d 228, 236, 479 N.E.2d 936, 942 (1985). So has armed robbery. *People v. Poliquin*, 97 Ill. App. 3d 122, 135, 421 N.E.2d 1362, 1372 (1981). Under *Montgomery*, any felony conviction is presumed to relate to testimonial deceit and is also admissible. *People v. Walker*, 157 Ill. App. 3d 133, 137, 510 N.E.2d 29, 31 (1987).

■ We conclude that the application of the mere-fact method in the instant case, where the State's main witness had many prior felony charges for theft, armed robbery, burglary, and possession of controlled substances, could have led to speculation by the jurors that this witness's prior convictions were all drug-related (based on the testimony adduced at trial) and that such speculation would have been far more damaging to defendant. See *Thomas*, 220 Ill. App. 3d 110, 580 N.E.2d 1353. The jury was not afforded a reasonable opportunity to determine the witness's credibility.

Since no such rule has, thus far, been adopted, the trial court erred in applying the mere-fact approach instead of applying the existing state law. Further, the record does not demonstrate that the trial court applied the test for impeachment set out in *Montgomery* and *Williams*.

Additionally, the State has failed to explain how the introduction of evidence of the specific type of prior convictions would have prejudiced either the State or Hill. Nondefendant witnesses need less protection from impeaching information, because such witnesses have less at stake. *Walker*, 157 Ill. App. 3d at 138, 510 N.E.2d at 32. It is evident that such evidence could have been considered by the jury insofar as it related to Hill's credibility as a witness. Since we are unable to conclude that evidence of the specific facts of Hill's prior convictions might not have affected that evaluation, we cannot regard the error in excluding such evidence as harmless. In our judgment, the exclusion of this evidence was reversible error. Defendant's convictions must be reversed, and the cause must be remanded for a new trial. *Walker*, 157 Ill. App. 3d at 138, 510 N.E.2d at 32.

Assuming, *arguendo,* that the trial court did not err in applying the mere-fact approach for impeachment, we conclude that defendant's right to confrontation guaranteed by the sixth amendment (U.S. Const., amend. VI) has been violated by the trial court's denial of an effective cross-examination of Hill.

■ "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." U.S. Const., amend. VI. The United States Supreme Court has held that the fourteenth amendment makes the guarantee of the confrontation clause obligatory on the states. *Pointer v. Texas,* 380 U.S. 400, 403, 13 L. Ed. 2d 923, 926, 85 S. Ct. 1065, 1067 (1965); see Ill. Const. 1970, art. I, § 8. It is well accepted that "a primary interest secured by [the confrontation clause] is the right of cross-examination." *Douglas v. Alabama,* 380 U.S. 415, 418, 13 L. Ed. 2d 934, 937, 85 S. Ct. 1074, 1076 (1965). The main purpose of the confrontation clause is to assure that the trier of fact has a satisfactory basis for evaluating the truth of the testimony. *People v. Jenkins,* 104 Ill. App. 3d 522, 524, 432 N.E.2d 1171, 1174 (1982). Stated differently, the issue under the confrontation clause is whether the jury has been made aware of adequate factors to determine the witness's credibility. *People v. Hines,* 94 Ill. App. 3d 1041, 1048, 419 N.E.2d 420, 425 (1981).

Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner traditionally has been allowed to impeach, *i.e.,* discredit, the witness. *People v. Sandoval,* 135 Ill. 2d 159, 174, 552 N.E.2d 726, 732 (1990), quoting *Davis v. Alaska,* 415 U.S. 308, 316, 39 L. Ed. 2d 347, 353-54, 94 S. Ct. 1105, 1110 (1974). One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. *Sandoval,* 135 Ill. 2d at 174, 552 N.E.2d at 732, quoting *Davis,* 415 U.S. at 316, 39 L. Ed. 2d at 353-54, 94 S. Ct. at 1110. The introduction of evidence of a prior crime is a general attack on the credibility of the witness.

■ The issue is whether defendant's inability to make the inquiry created a substantial risk of prejudice by depriving him of the ability to test the truth of the witness's direct testimony; in answering this question, the court must look to the record as a whole and the alternative means open to defendant to impeach the witness. *People v. Harris,* 123 Ill. 2d 113, 145, 526 N.E.2d 335, 348 (1988). If that review shows that the jury has been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because defendant has been prohibited on cross-examination from pursuing other areas of inquiry. *Harris,* 123 Ill. 2d

at 145, 526 N.E.2d at 348. Thus, in determining whether defendant's right of confrontation has been violated, a reviewing court looks not only to what defendant was prohibited from doing but also to what he has been allowed to do; and where the jury has been made aware of adequate factors regarding the credibility of the prosecution witness, a reviewing court may conclude that there is no constitutional error or manifest prejudice to the defendant. *People v. Harris*, 262 Ill. App. 3d 35, 46-47, 634 N.E.2d 318, 326 (1994), citing *People v. Hines*, 94 Ill. App. 3d at 1048-49, 419 N.E.2d at 426.

■ With these principles in mind, we now address whether, with respect to defendant's right to challenge the credibility of Hill, it was prejudicial or reversible error for the trial court to limit the testimony concerning the witness's prior felonies for theft and armed robbery. The record reveals that defendant was limited in presenting evidence of Hill's credibility via his prior convictions. As stated earlier, the trial court only permitted defendant to elicit from Hill that he had prior felonies, but defendant was not permitted to elicit evidence of the types of felonies. Specifically, Hill testified that he was serving 10 years' imprisonment for this crime and was awaiting sentencing on two Class X felonies. Defendant should have been allowed to demonstrate to the jury that Hill had prior felony convictions of theft, burglary, and armed robbery, all which are crimes of dishonesty.

Defendant was not allowed to make the jury aware of adequate factors to determine whether Hill was worthy of belief. It was error to prevent defendant from cross-examining Hill concerning his prior convictions. This was a violation of defendant's right of confrontation and resulted in manifest prejudice to defendant.

■ Finally, we reiterate that we have reviewed the evidence at trial, and we find that it was sufficient for a fact finder to conclude that defendant was guilty beyond a reasonable doubt. We are not making a determination of defendant's guilt or innocence that is binding on retrial. See *People v. Spain*, 285 Ill. App. 3d 228, 241, 673 N.E.2d 414, 424 (1996). Instead, our examination of the sufficiency of the evidence eliminates any risk that defendant would be subject to double jeopardy. *People v. Taylor*, 76 Ill. 2d 289, 309-10, 391 N.E.2d 366, 375 (1979).

Defendant has briefed and argued a number of issues, but in view of our decision and the unlikelihood that the alleged errors will reoccur on retrial, we need not reach them.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of

Madison County is reversed, and the cause is remanded with directions to proceed in accordance with this order.

Reversed and remanded with directions.

HOPKINS, J., concurs.

JUSTICE KUEHN, specially concurring:
· I agree that defendant's constitutional right to confront a chief accuser was unduly restricted. I write to underscore how mere-fact impeachment actually hindered that right and to suggest that its use to shield witnesses other than a defendant is unwarranted.

To the extent that my colleagues find mere-fact impeachment to be incompatible with our traditional approach for gatekeeping the use of prior convictions, I respectfully disagree. If the application of the *Montgomery* three-part test leads to a determination that the probative value of impeachment outweighs the potential for unfair prejudice to a defendant, it should fall within the trial court's discretion to hedge that determination with mere-fact impeachment. I would allow for a trial court's approval of mere-fact impeachment whenever necessary to reduce the risk of unfair prejudice to a defendant.

The State's case depended on James Hill. Without Hill, the prosecution could not place defendant at the crime scene or define his role in the offense.

The attenuation of *ad hominem* impeachment, produced by the nondisclosure of Hill's past crimes, was sufficient for the majority to find a sixth amendment violation. Although I agree with my colleagues, mere-fact impeachment's veil shielded Hill's credence from effective challenge in other ways. It allowed Hill to assert with impunity that an oath, rather than self-interest, motivated his testimony.

Defendant questioned Hill's motive to bear false witness against a former comrade. He insinuated that Hill would say anything to curry prosecutorial favor in order to ease his own predicament. In response, Hill flatly denied any deal in return for his cooperation with the State. He also insisted that he expected nothing in return for his testimony. Thereafter, mere-fact impeachment provided a shield that protected both assertions from challenge.

Defendant was denied the means by which to show that Hill's punishment for armed robbery was inexplicably lenient. There was no measure for Hill's 10-year prison sentence without disclosure of Hill's prior criminality. Thus, Hill's claim that his cooperation was unbargained for and that his sentence was imposed without State intercession went unchallenged. The proper evaluation of Hill's avowal

required the context of four armed robbery convictions within a four-year time frame. With this knowledge, a jury may well have determined that a four-time convicted armed robber could not obtain such a lenient sentence without prosecutorial assistance, that Hill's claim to the contrary was a lie, and that his testimony was the unreliable by-product of an effort to preserve his own freedom.

Moreover, the jury needed to know that Hill awaited sentence on two more armed robberies. In addition to the context this information would have provided for Hill's initial claim, it would have countered Hill's insistence that he expected nothing in return for his testimony. The jury needed to know that Hill faced extended-term punishment for a fifth and sixth armed robbery conviction. It needed to know that without concessions from the State, Hill would spend the better portion of his life in prison.

Instead, the mere-fact-impeachment approach was carried over to Hill's pending charges. Defendant could only elicit the fact that Hill awaited sentence on "two class X felonies." The jury was left to ponder what that meant. Thus, defendant could not establish the true nature of Hill's peril. As a consequence, he could not show the extent to which Hill needed prosecutorial concessions. A proper evaluation of Hill's second claim required the context of two pending armed robberies and the prospective penalties they carried. A suitably apprised jury may have concluded that Hill expected favorable treatment in return for his testimony, that his statements denying same were false, and that his testimony was an undependable consequence of his attempts to remain free.

Thus, mere-fact impeachment unduly restricted defendant's constitutional right to confront his chief accuser in several ways. Furthermore, the need to employ mere-fact impeachment in order to protect Hill from unfair prejudice was unfounded.

We allow for the use of evidence of a person's criminal past on the supposition that knowledge of certain past misconduct helps jurors measure the worth of what someone has to say. This premise applies to all witnesses, but it takes on an added dimension when the person impeached is an accused in a criminal case. While evidence of a defendant's criminal past discredits what he says, its admission can undermine more than just his word. Since a criminal past is relevant to guilt, its admission can undermine the presumption of innocence. A wicked past manifests wicked ways that enhance the likelihood of guilt no matter what other evidence exists to support the charge at hand.

Here, the admission of evidence of defendant's prior armed robbery conviction would have demonstrated a penchant for robbing

people at gunpoint. Such a propensity is highly germane to the question of whether defendant committed this armed robbery. However, the law is well settled that such highly charged evidence is inadmissible if its sole purpose is to establish a criminal bent from which to infer guilt. This created the predicament that accompanied the potential admission of defendant's earlier armed robbery conviction—the inherent danger that defendant's prior conviction would sway thinking on the question of guilt rather than the question that allowed for its admission into evidence.

This danger is unique to criminal defendants. Justice Steigmann's mere-fact-impeachment approach derives logic as a means to address this danger. Mere-fact impeachment reduces the risk that jurors will misuse a prior conviction to decide a defendant's guilt. This is its only logical purpose—to ease the potential for *unfair* prejudice that defendants face when impeached with their prior criminality.

James Hill did not take the stand to defend against a criminal charge. His prior convictions could not be misused to decide his guilt because his guilt was not in issue. The only prejudice he faced was the possibility that jurors would use the evidence of his prior criminality for its intended purpose and discount his testimony because of it. Disclosure of the dishonest nature of Hill's criminal past would have further prejudiced his testimony, but not in an unfair way. Jurors could not have used the nature of his crimes other than to question his testimony's worth. This is precisely why we allow for the admission of this form of impeachment evidence.

For the reasons stated, I specially concur.