THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANNY SPAIN *et al.*, Defendants-Appellants.

First District (4th Division)    Nos. 1—92—2780, 1—92—3260 cons.

Opinion filed November 14, 1996.

230

Victor M. Pilolla, of Oak Park, for appellant Danny Spain.

Michael J. Pelletier, of State Appellate Defender's Office, of Chicago (Patricia Unsinn, of counsel), for appellant Eduardo Morones.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Defendants, Danny Spain and Eduardo Morones, were tried together in a joint jury trial. Each was found guilty of (a) first-degree murder on an accountability theory and (b) conspiracy to commit murder. Spain was sentenced to 35 years in jail for first-degree murder and Morones was sentenced to 25 years in jail for first-degree murder. The trial court vacated the conspiracy convictions. Spain appeals and argues: (1) the trial court erred when it denied his motion to sever his trial from that of codefendant Morones; (2) the trial court made numerous incorrect evidentiary rulings; (3) the trial court erred when it allowed the attorney for witness Douglas Fuit to assert the

attorney-client privilege when Spain questioned him about conversations he had with Fuit; (4) the trial court erred by denying his tendered instruction that described his theory of the case and stated the prosecution had to disprove his theory of the case beyond a reasonable doubt; (5) the trial court erred when it *sua sponte* gave Illinois Pattern Jury Instructions, Criminal, No. 5.06 (2d ed. 1981); (6) he was denied a fair trial when the State made improper comments during closing argument; and (7) he was denied due process when the State failed to inform him of criminal contempt proceedings against witness Maribel Martinez. Morones appeals and argues: (1) the trial court erred by denying his motion to sever his trial from that of codefendant Spain; (2) the trial court erred by admitting the videotaped evidence deposition of witness Nancy Shallon; (3) he was denied due process when the State failed to correct the false testimony of witness Juan Moreno that the State had not promised him anything in return for his testimony; and (4) he was denied a fair trial when the State, during closing argument, equated his membership in a gang with his accountability for the murder. We reverse and remand for separate trials for defendants Spain and Morones.

At trial, the jury heard testimony regarding three gangs: the Party Players, the Two-Six and a rival of those two gangs, the Saints. The jury heard that Danny Spain, Doug Fuit and Carlos Rasso were "Two-Sixers" and Eduardo Morones and Roderigo Gonzalez were "Party Players." The jury learned that Rasso and Gonzalez were the "shooters" and that Fuit was an alleged eyewitness. Only Spain and Morones were on trial on the theory of accountability, specifically, Morones carried a rifle for Gonzalez and Spain drove the car for Rasso.

At trial, the jury heard testimony that on the evening of September 16, 1988, members of the Two-Six and the Party Players decided to kill a member of a rival gang, the Saints. Pursuant to that plan, Two-Sixer Danny Spain drove fellow Two-Sixers Doug Fuit and Carlos Rasso to Saints territory at 46th and Honore.

At the same time, Party Players Eduardo Morones and Roderigo Gonzalez walked to Saints territory at 4608 South Honore to provide help for the Two-Sixers. Morones carried a rifle and handed it to Gonzalez when they arrived. Two-Sixers Spain and Rasso drove up, and Rasso shot in the direction of the Saint. Party-Player Gonzalez then fired the rifle in the same direction. None of the shots hit the Saint. Instead, a shot hit and killed Ida Garcia, an innocent bystander, who had been waiting on the corner for her brother.

The jury found defendants Spain and Morones legally accountable for the death of the victim and convicted them of first-degree murder. Defendants appealed.

Both defendants contend the trial court erred by failing to sever their trials. Because the issue of severance is dispositive for both defendants, we address that issue first as it specifically applies to each defendant and then address their other individual claims of error.

Spain's Motion for Severance

■ Spain contends the trial court erred by failing to grant his oral motion for severance after trial began. Spain did not make a pretrial motion for severance. Spain moved for severance after trial began when the State sought to admit a statement from Morones that referred to Two-Six involvement in the murder. Although generally a defendant must move for severance *prior* to trial, demonstrating how a joint trial will prejudice him (*People v. Peterson*, 273 Ill. App. 3d 412, 426 (1995)), the trial court has a continuing duty at all stages of trial to grant severance if prejudice appears. *People v. Blount*, 220 Ill. App. 3d 732, 740 (1991). Spain's motion alerted the trial judge to the potential prejudice of jointly trying both defendants. Accordingly, Spain has not waived this issue, despite the State's contention to the contrary, and we consider his claim of error.

■ Defendants jointly indicted are to be jointly tried unless fairness to one of them requires a separate trial to avoid prejudice. *People v. Davis*, 254 Ill. App. 3d 651, 661 (1993). One type of prejudice occurs when a codefendant has made hearsay admissions implicating defendant. *People v. Daugherty*, 102 Ill. 2d 533, 541 (1984). Defendant is denied his constitutional right of confrontation if the codefendant's hearsay admission is admitted against the defendant and the defendant is unable to cross-examine the codefendant because the latter does not testify. *Daugherty*, 102 Ill. 2d at 541. In such a case, the trial court must choose between severance, nonuse of the admission, or redaction to eliminate all reference to the implicated defendant. *Blount*, 220 Ill. App. 3d at 738.

A second type of prejudice occurs when codefendants' defenses are so antagonistic to each other that severance is imperative to assure a fair trial. *People v. Braune*, 363 Ill. 551 (1936), is the classic example of antagonistic defenses. There, each defendant was "protesting his innocence and condemning the other." "The trial was in many respects more of a contest between the defendants than between the People and the defendants. It produced a spectacle where the People frequently stood by and witnessed a combat in which the defendants attempted to destroy each other." *Braune*, 363 Ill. at 555, 557.

■ Spain alleges both forms of prejudice. First, he argues the trial

court erred by admitting Morones' statement. In his statement, Morones said that on the night of the murder Morones heard the Two-Sixers were going to pull a "hit" on the Saints and needed backup, that Morones and Gonzalez walked to 46th and Honore, where they saw Two-Six gang members drive by, and that Morones heard shots and Gonzalez fired a series of shots. Spain contends Morones' statement implicated him in the murder, that Spain could not cross-examine because Morones did not testify and, therefore, the trial court should have severed the trial. We disagree. Morones' statement does not mention Spain by name, nor does it say or imply Spain was aware of the plan to pull a "hit" on the Saints or that he was present at the time of the shooting. In short, Morones' statement does not implicate Spain for the murder, and it cannot be a basis for severance.

Spain's next argument for severance is that Morones' defense was antagonistic to him. The State disagrees. The State contends Morones' only theory at trial, that merely carrying the rifle for Gonzalez did not make Morones accountable for murder, did not implicate Spain, who raised an alibi defense, contending he was not present at the scene of the murder.

However, Morones developed two theories: (1) even if Gonzalez shot the victim, Morones was not accountable for that conduct; and (2) there was *no* rifleman or Party Player involved in the crime, so the murder resulted solely from the handgun shot from the car driven by Spain. It is the second theory by Morones which met the *Braune* test, by Morones protesting his innocence and condemning Spain. The following testimony illustrates:

Morones Protesting His Innocence:

(a) Morones elicited testimony from Doctor Nancy Jones, the forensic pathologist who performed the autopsy on the victim, that a handgun, rather than a rifle, caused the mortal wound; (b) he elicited cross-examination testimony from Assistant State's Attorney Pulia that Spain did not mention Morones or Gonzalez in his confession, nor did Spain state that the "hit" on the Saints was made jointly with the Party Players; (c) he elicited cross-examination testimony from eyewitness Evette Matos that she did not see Morones or anyone else with a rifle on the night of the shooting; and (d) he elicited cross-examination testimony from Fuit that he did not see Morones or a rifleman at the time of the shooting.

Morones Condemning Spain:

(a) After Danny Spain testified that police physically coerced him into making a false confession, Morones elicited cross-examination testimony from Spain that Spain never told Assis-

tant State's Attorney Pulia that the police had hit him or that his confession was false; further, Morones elicited testimony from Spain that Spain told Pulia the police officers had been "nice" to him, and Spain also admitted he was not drunk or under the influence of a controlled substance when he signed the confession; (b) after Spain's mother testified Ronnie Spain never allowed his brother Danny Spain to drive his car, Morones elicited an admission from her that she was not always present when Ronnie and Danny used the car; (c) during opening statement, Morones stated he "didn't have a grudge against anybody from a rival gang," and during closing argument, Morones asked the jury to remember who "had the grudge against the Saints"; and (d) testimony established the Two-Sixers wanted to kill a member of the Saints in retaliation for the Saints' killing of a Two-Six member.

The above examples demonstrate that Morones protested his innocence and implicated Spain. Therefore, Morones' defense was antagonistic to Spain and the trial court erred when it denied Spain's motion for severance.

### Morones' Motion for Severance

■ Morones contends the trial court erred in denying his pretrial motion for severance. In his pretrial motion, Morones informed the court that a joint trial would become a "contest among the defendants," because Spain would assert his own innocence and implicate Morones in the murder. In support of his motion, Morones attached letters from Spain stating he intended "to blame Morones for everything that happened" in opening statements and that Spain's defense would be "[Morones] and others caused the death of Ida Garcia, and *** there never was a vehicle that allegedly drove by where Carlos Rasso allegedly fired a handgun towards Ida Garcia."

Spain fulfilled his promise to assert his own innocence and blame Morones for Garcia's death. During opening statement, Spain stated:

"[W]e're [Spain and Morones] sitting at the defense table, but we're not together. We're trying to get as far away as we can. The evidence is going to show that Mr. Morones carried the gun, the 22 caliber gun that Mr. Gonzalez fired for which the medical experts and which the police firearm experts are going to show that it was a 22 caliber fragment that caused the death of Ida Garcia. And you are not going to hear one word, according to the evidence, from any police officer about the existence of another gun that allegedly was fired by Carlos Rasso."

During closing argument, Spain stated:

"The only gun in evidence, the only gun anybody ever found is this gun, 22 caliber gun, which the firearms expert said to you

without a doubt, beyond all doubt, fired the bullets. \*\*\* [The witnesses] all heard one series of shots, of course, because there's one shooter. It is \*\*\* Gonzalez, holding this gun \*\*\* [the] only unrefuted statement in this entire case is Eduardo Morones' confession that he was there carrying that gun for that murderer \*\*\* again the only unrefuted confession in this entire case is Eduardo Morones'. No one suggested it wasn't true. You're looking at the murder weapon, you're looking at the man who carried the murder weapon \*\*\*."

The State contends these comments by Spain were not antagonistic to Morones, because Morones admitted in *his* opening statement and closing argument that he carried the rifle Gonzalez used to kill the victim. We disagree. Morones argued that carrying the rifle did not make him accountable for the death even if the jury believed Gonzalez fired the fatal shot. Morones' argument was clearly at odds with Spain's argument that both Gonzalez *and* Morones were to blame for the murder.

Another example of Spain's antagonism toward Morones may be found in Spain's opening statement, when Spain commented on Morones' decision not to testify:

"The purpose of an opening statement on \*\*\* behalf of Danny Spain is to give you an outline of what the defendant, Danny Spain, intends to show. You may wonder why the defendant has to say anything. The judge told you he's presumed to be innocent. The judge told you that you can't make any inference from the fact he doesn't testify. According to our system of justice, Danny Spain can sit there, not answer one question. Not get on the witness stand and you would have to determine that the State, the government, the people of the State of Illinois must prove that Danny Spain is guilty beyond a reasonable doubt.

It's wonderful. It sounds wonderful, but in real life for the fourteen of you, it is almost impossible unless someone gets on the witness stand and says 'I didn't do it and I was someplace else' because that wonderful constitution we have, the wonderful presumption of innocence are words. And people want to hear it. Like Harry Truman says, you know, 'You can't stand the heat, get out of the kitchen.' They have to hear it from the horse's mouth. Someone has to get on the stand."

In *People v. Bean*, 109 Ill. 2d 80 (1985), our supreme court found a similar comment on a codefendant's failure to testify deprived that codefendant of a fair trial. There, Bean and Byron were jointly tried and convicted of murder, armed robbery, home invasion, and conspiracy, and Bean was also convicted of solicitation. *Bean*, 109 Ill. 2d at 84. During opening statement, Byron stated:

"His Honor *** told you that the defense need prove nothing in a criminal case. And the defendant need never take the stand, never has to take the stand because the burden of proof is on the State ***.

But Bob Byron is going to take the witness stand. He is going to testify. Because an innocent man can't wait to tell his story. And a guilty man will never take the stand." *Bean*, 109 Ill. 2d at 87. The supreme court found reversible error, citing *De Luna v. United States*, 308 F.2d 140 (5th Cir. 1962), a case where the codefendant's attorney commented on De Luna's failure to testify. The *De Luna* court noted Supreme Court cases forbidding self-incrimination and concluded that comment from a codefendant's attorney might be more harmful than comment by the judge or prosecutor. Further, as in the present case, the trial judge in *De Luna* instructed the jury to disregard counsel's remarks, but the court held " 'considering the head-on collision between the two defendants, the repetition of the comments, and the extended colloquy over the comments between the trial judge and the lawyers, the implication of guilt to de Luna was magnified to such an extent that it seems unrealistic to think any instruction to the jury could undo the prejudicial effects of the reference to de Luna's silence. The seed of inference was so well planted, it is fair to assume that it germinated.' " *Bean*, 109 Ill. 2d at 98, quoting *De Luna*, 308 F.2d at 154-55.

Similarly, the supreme court in *Bean* found that "codefendant's counsel drew attention to his remarks by specifically pointing out that even though the judge would instruct the jury that they should not draw inferences from the defendant's failure to testify, he wished to mention it anyway. This comment completely destroyed any protection provided by the fifth amendment ***." *Bean*, 109 Ill. 2d at 98-99.

In this case, Spain pointed out that even though the judge would instruct the jury that it should not draw inferences from the defendant's failure to testify, the defendant must still get on the witness stand and say "I didn't do it." As in *De Luna* and *Bean*, the comment destroyed any protection provided to Morones by the fifth amendment.

Spain further showed his antagonism toward Morones when Morones objected to the admission of the videotaped evidence deposition of Nancy Shallon. Shallon provided the only eyewitness testimony that a rifleman was at 4608 South Honore at the time of the murder. Her testimony contradicted Morones' theory that no rifleman or Party Player was at the scene of the crime. Spain argued for the admission of the videotaped deposition, and the trial court admitted

it at trial. Later, during closing argument, Spain argued that the jury should believe Shallon because of her "photographic memory," which implicates Morones, but downplayed the evidence linking him to the crime.

In sum, the defenses of Spain and Morones *did* clash, with each defendant protesting his innocence at the expense of the other. Therefore, the trial court abused its discretion by failing to sever the trial, and we reverse and remand for separate trials for Spain and Morones.

We address issues that are likely to recur during the new trials.

Issues at Spain's Retrial

We have addressed Spain's first issue on appeal regarding severance of his trial from that of codefendant Morones.

■ Second, Spain argues the trial court's evidentiary rulings constitute reversible error because the court repeatedly excluded relevant testimony. Spain waived this issue by failing to make adequate offers of proof as to most of what the various witnesses would have said. *People v. Andrews*, 146 Ill. 2d 413, 420-21 (1992). Third, Spain argues that the trial court erred by allowing Neil Kaufman, the attorney for witness Doug Fuit, to assert the attorney-client privilege at trial when Spain asked Kaufman about his conversations with Fuit. The absence of an offer of proof as to Kaufman's testimony does not hinder our review in this instance, because the nature of Kaufman's testimony is obvious. *Bafia v. City International Trucks, Inc.*, 258 Ill. App. 3d 4, 7 (1994).

Spain called Kaufman to corroborate parts of Fuit's earlier testimony. In that testimony, Fuit said he once told Kaufman he had alibi witnesses who could place him somewhere other than the crime scene at the time of the murder. Such testimony was important to Spain because it called into question other portions of Fuit's testimony that he was in the car driven by Spain when shots were fired from the car at the victim.

Spain makes numerous arguments why Kaufman's testimony would not have violated the attorney-client privilege. We need not address those arguments, because Kaufman's testimony, which Spain intended to offer for the truth of the matter asserted, was inadmissible hearsay. Accordingly, the trial court did not err by excluding Kaufman's testimony.

Fourth, Spain argues the trial court erred by refusing to give his defense instruction 20, a non-Illinois Pattern Jury Instruction. The proposed instruction stated that Spain had an alibi defense the police refused to investigate, that the police had conspired to procure a

false confession from him, and that the State had to disprove his defense beyond a reasonable doubt.

■ The question of alibi instructions is covered by Illinois Pattern Jury Instructions, Criminal, No. 24—25.05 (2d ed. 1981) (hereinafter IPI Criminal 2d). The committee recommends no instruction be given on this subject because of its view that instructions should avoid commenting on particular types of evidence. See *People v. Poe*, 48 Ill. 2d 506, 511-12 (1971). Additionally, if a non-IPI instruction is given, it must be simple, brief, impartial, and free from argument. *Poe*, 48 Ill. 2d at 511; 134 Ill. 2d R. 451(a). Here, the trial court gave IPI Criminal 2d Nos. 2.03 and 7.02A, which accurately describe the State's burden of proof, and rejected Spain's instruction 20, which was long and argumentative. Therefore, the trial court committed no abuse of discretion by refusing to give Spain's instruction 20, a non-Illinois Pattern Jury Instruction. See 134 Ill. 2d R. 451(a).

■ Fifth, Spain contends the trial court erred when it *sua sponte* gave the following version of IPI Criminal 2d No. 5.06:

"A person who is legally responsible for the conduct of another may be convicted for the offense committed by the other person even though the other person, who it is claimed committed the offense, has not been prosecuted or is not amenable to justice."

That instruction referred to the alleged rifleman, Gonzalez, whom the State has not prosecuted.

Spain argues that no evidence exists that Gonzalez is not amenable to justice. The State does not respond to that argument in its appellate brief. The record indicates the trial judge told the parties he was giving the instruction even though he did not know whether Gonzalez was amenable to justice. This is error and, on remand, the trial court should not include the "not amenable to justice" portion of IPI Criminal 2d No. 5.06 unless there is evidence to that effect.

■ Sixth, Spain argues he was denied a fair trial when the State made three improper comments during closing argument. Specifically, Spain contends it was error for the State to tell the jury to "send a message to their buddies *** [and] tell the good people *** of this neighborhood that justice will not abandon them." We find no error, as the State may properly admonish the jury to "send a message to the community" that violent crime will not be tolerated. *People v. Batson*, 225 Ill. App. 3d 157, 168-69 (1992).

Spain also specifically contends it was error for the State to tell the jury "You're here, ladies and gentlemen, as representatives of the people of the State." In support, Spain cites *People v. Thomas*, 146 Ill. App. 3d 1087 (1986), in which the appellate court reversed and remanded for a new trial because the State told the jury "There's

nobody here for the People, just you." *Thomas*, 146 Ill. App. 3d at 1089. The *Thomas* court held the State's comment was a "perversion of the principle that a jury is composed of nonpartisans who function under the presumption that a defendant is innocent until proved otherwise." *Thomas*, 146 Ill. App. 3d at 1089.

However, in *People v. Johnson*, 220 Ill. App. 3d 550, 563 (1991), the appellate court found no reversible error when the State told the jury "in this case you are the People of the State of Illinois." The *Johnson* court did "not believe that [the State's] comment misled the jurors as to their function, on which they were adequately instructed, or that it was a perversion of the principle that a jury is a nonpartisan body. Rather, when considered in the context of the State's argument in its entirety, [the State's comment is an] additional urging by the prosecutor that the jury fearlessly administer the law." *Johnson*, 220 Ill. App. 3d at 563.

In the present case, as in *Johnson*, we hold the State's comment that the jury represents the people of the State to be additional urging that the jury fearlessly administer the law. Accordingly, we find no error.

Spain also specifically contends it was error for the State to tell the jury that the police officers who testified would not put their careers and the security of their families on the line by conspiring to frame Spain for murder. In support, Spain cites *People v. Rivera*, 235 Ill. App. 3d 536 (1992), which held that these types of remarks generally are error. However, we find no error in the present case because the State's remarks were invited by Spain's argument that the police framed him. *People v. Richardson*, 123 Ill. 2d 322, 356 (1988); *People v. Davis*, 228 Ill. App. 3d 835, 841 (1992).

█ Seventh, Spain argues he was denied due process when the State failed to inform him of criminal contempt proceedings against witness Maribel Martinez. Spain contends the failure to disclose this information prevented Spain from cross-examining Martinez about any assistance she may have rendered in the prosecution of Spain in exchange for leniency from the State on the criminal contempt charges. We need not address this issue for retrial as Spain is now aware of the contempt proceedings against Martinez.

Issues at Morones' Retrial

We have addressed Morones' first issue on appeal regarding severance of his trial from codefendant Spain.

Second, Morones argues the trial court erred by admitting the videotaped evidence deposition of Nancy Shallon. In her deposition, Shallon stated she was pulling her dog into her apartment at 4608

South Honore in the early hours of September 17, 1988, when she saw a young Hispanic man leaning on a car with a rifle in his hand. After she shut the door, Shallon heard several shots.

Morones argues neither he nor his attorney was present at the deposition and, therefore, its admission violated his right to confront and cross-examine the witnesses against him. Morones also contends the trial court erred in ordering the deposition because (1) there was no showing Shallon was unavailable for trial as required by Supreme Court Rule 414 (134 Ill. 2d R. 414), which governs the use of evidence depositions; and (2) neither Morones nor his attorney made a written waiver of their right to be present at the deposition, as required by Supreme Court Rule 414(e).

The State argues that since Nancy Shallon testified in open court (albeit outside the presence of the jury), on a scheduled court date, with the judge presiding, her appearance was "testimony," not a "deposition," and that Supreme Court Rule 414 is not applicable.

■ Testimony taken outside the presence of the jury for later admission at trial, even if taken in a courtroom with a judge presiding, is an evidence deposition that must comply with Supreme Court Rule 414. See *People v. Johnson*, 118 Ill. 2d 501 (1987). Accordingly, the appearance of Nancy Shallon is by evidence deposition and controlled by Supreme Court Rule 414(e).

■ Supreme Court Rule 414(e) provides that a defendant and his counsel may waive *in writing* the right to confront and cross-examine any witness whose deposition is taken. See 134 Ill. 2d R. 414(e). Neither Morones nor his counsel made a written waiver of the right to confront and cross-examine Shallon. Therefore, the trial court erred in admitting her videotaped evidence deposition. The trial court shall not admit Shallon's deposition testimony during Morones' new trial.

■ Third, Morones argues he was denied due process when the State failed to correct the false testimony of its witness, Juan Moreno, that the State had not promised him any beneficial treatment in exchange for his testimony. Morones argues Moreno was a defendant in a pending aggravated battery case, and the State told Moreno it would tell the sentencing judge in that case about his cooperation in this case against Morones and Spain. We agree the State erred by not disclosing that information to the jury on direct examination (see *People v. Holmes*, 238 Ill. App. 3d 480, 490-91 (1992)), but the error was harmless since the jury heard the information on cross-examination.

■ Fourth, Morones argues he was denied a fair trial when the State, during three separate parts of its closing argument, improperly equated his membership in a gang with his accountability for the

murder. We find no error. The first part of the State's closing argument discussed the street gang subculture and was based on the evidence at trial that the murder was motivated by gang loyalties.

The second part of the State's closing argument stated that Morones provided backup and moral support for Gonzalez. That comment was also supported by the evidence and did not imply that Morones' mere membership in a gang made him accountable for the murder.

The third part of the State's closing argument reflected unfavorably on Morones by saying that he was a coward. An unfavorable description of a defendant is not improper. *People v. Miller*, 101 Ill. App. 3d 1029, 1038-39 (1981).

■ Finally, we have reviewed the evidence at trial and find it was sufficient for a trier of fact to conclude defendants Spain and Morones were guilty beyond a reasonable doubt. We are not making a determination of guilt or innocence that is binding on retrial. Rather, our consideration of the sufficiency of the evidence removes the risk that defendants would be subject to double jeopardy. *People v. Taylor*, 76 Ill. 2d 289, 309-10 (1979).

For the foregoing reasons, we reverse and remand for new trials for defendants Spain and Morones.

Reversed and remanded.

CAHILL and THEIS, JJ., concur.