2025 IL App (2d) 240313-U
No. 2-24-0313
Order filed May 14, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-413 |
| TERRENCE BONDS, | ) ) ) | Honorable Alice C. Tracy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Defendant forfeited his argument that the trial court abused its discretion when it allowed the State to make a motion, after defendant's testimony, to introduce his prior drug-possession conviction for impeachment purposes; defendant also failed to establish plain error, because there is no requirement that the State file such a motion before defendant testifies.  (2) Defendant did not establish prejudice from trial counsel's failure to file a motion *in limine* to exclude defendant's prior conviction.  (3) Defendant invited the prosecutor's statement that the police officers would not risk their careers by testifying falsely against defendant.

¶ 2    Defendant, Terrence Bonds, appeals from his conviction of unlawful possession of less than 15 grams of a controlled substance (tramadol) (720 ILCS 570/402(c) (West 2018)).  He contends that (1) the trial court abused its discretion when it granted the State's motion, made only

after defendant testified, to admit defendant's prior drug-possession conviction as impeachment; (2) his trial counsel was ineffective for failing to file a motion *in limine* to exclude the prior conviction; and (3) plain error occurred when the State bolstered the credibility of the police witnesses by stating during closing argument that the officers would not risk losing their jobs by lying about their encounter with defendant. We affirm because defendant forfeited both of his claims, his counsel was not ineffective, and there was no plain error.

¶ 3                                    I. BACKGROUND

¶ 4     The State charged defendant with one count of unlawful possession of less than 15 grams of a controlled substance (tramadol). The following facts were developed at defendant's September 18, 2023, jury trial.

¶ 5     We begin with the testimony of a witness from defendant's case-in-chief: Sergeant Duffy (first name not given) of the Elgin Police Department. Duffy testified that on February 27, 2020, he performed a traffic stop of a vehicle driven by a female with defendant as the sole passenger. Duffy searched both occupants. Duffy searched the driver first and then arrested her.

¶ 6     Duffy identified two videos showing his search of defendant at the scene. The first video was from another officer's body camera at the scene (video 1). The second was from Duffy's body camera (video 2).

¶ 7     Video 1 was taken from several feet behind and to the right of defendant and Duffy. The view of them is mostly unobstructed, and Duffy's basic movements are ascertainable. However, the distance, angle, and shadows make it difficult to judge how thoroughly Duffy searched defendant's various pockets.

¶ 8     Video 1 begins with defendant leaning with his hands on the trunk of the stopped vehicle. Duffy stood behind defendant as he searched defendant's coat and pants. At approximately the

25-second mark, Duffy reached around defendant and inserted a finger of his right hand into what appeared to be a shallow pocket on the front upper right side of defendant's pants. Duffy did not appear to remove any items from the pocket. A few seconds later, Duffy inserted his entire right hand into a larger pocket on the front upper right side of defendant's pants. Duffy did not appear to remove anything from that pocket, either. Duffy also searched several of defendant's coat pockets. Duffy removed a quantity of cash from defendant's right coat pocket. He initially placed it on the trunk, but another officer handed it back to defendant.

¶ 9 Although video 2 shows the search from Duffy's perspective, the body camera was too close to defendant to capture Duffy's search of defendant's pants pockets. Duffy testified that he found no contraband during his on-scene search of defendant.

¶ 10 On cross-examination, Duffy explained that the officers had "probable cause for the search" because they smelled the odor of cannabis emanating from the car and then defendant "actually produced cannabis." Duffy searched defendant for "weapons or further contraband that [defendant] could have on him." Duffy agreed that he conducted a "very cursory search" of defendant and was "[m]ainly looking for weapons." Duffy denied searching defendant's "coin pocket." He also denied searching defendant's hood, collar, armpits, underwear, crotch, buttocks, socks, or shoes. Duffy testified that, after he found the cash on defendant, he returned it because he did not want to be accused of taking it.

¶ 11 Elgin police detective Craig Arnold testified for the State that on February 27, 2020, he transported defendant from the scene to the police department. When they arrived, Arnold searched defendant in the facility's holding area. During the search, Arnold felt "something" inside defendant's right front "coin pocket." When Arnold asked defendant what the item was, defendant answered, "pain medication." Arnold then removed a small plastic bag containing two

white pills. When Arnold asked what the pills were, defendant said, "tramadol." Arnold identified State's exhibit No. 1 as containing (1) a corner of a small plastic bag, which was knotted shut and which, when recovered by Arnold during the search of defendant, contained two intact pills, and (2) the previously recovered pills, which were now crushed and in different plastic bags.

¶ 12    On cross-examination, Arnold admitted that there were security cameras in the jail area of the police department where he searched defendant. No video from any of those cameras was admitted at trial.

¶ 13    On redirect examination, Arnold testified that he conducted a "very" "thorough" search of defendant at the police department. According to Arnold, he was looking for "[a]ny contraband at all."

¶ 14    Elgin police officer Raul Lara testified for the State that he was called to the police department on February 27, 2020. Arnold gave him two white pills contained in a clear plastic bag. The parties stipulated that the two pills tested positive for the presence of tramadol.

¶ 15    Defendant testified that on February 27, 2020, the police stopped the vehicle in which he was a passenger. He was searched, handcuffed, and transported to the police department After he arrived, he was asked to remove all belongings from his pockets. According to defendant, he—not an officer—removed the items from his pockets before he was placed into a holding cell. Defendant was also searched by an officer who did not participate in the search at the scene. Defendant did not recall an officer "pulling two prescription pills or two white pills out of [defendant's] pocket" during the search He denied having two white pills in his pocket, being asked about two white pills, or telling any police officer that he had tramadol in his pocket. He further denied that he had tramadol in his pocket, that any officer removed tramadol from his pocket, or that he was told he was "under investigation for tramadol."

¶ 16    On cross-examination, defendant denied having tramadol in his "coin pocket" or telling either Duffy or Lara that he had tramadol in his pocket. He also denied telling the officers that the tramadol belonged to his girlfriend and that he had put it in a clear plastic bag to avoid losing it.

¶ 17    Duffy testified for the State in rebuttal that at about 2:20 p.m. on February 27, 2020, while at the police department, he read defendant a *Miranda* advisory (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) and defendant signed a *Miranda* form. Lara was also present. According to Duffy, defendant admitted that he had two tramadol pills in his pocket during the traffic stop. Defendant told Duffy that the pills belonged to his girlfriend and that, because he feared losing them, he put them in the corner of a clear plastic bag and twisted it shut.

¶ 18    On cross-examination, Duffy admitted that, although there were rooms at the police station with recording capability, he interviewed defendant in a room with no recording device. Duffy did not have defendant provide a written statement about possessing tramadol.

¶ 19    Lara also testified in rebuttal. According to Lara, he interviewed defendant at the police station with Duffy present. Defendant admitted that he had two tramadol pills in his pocket during the traffic stop. Defendant also stated that the pills belonged to his girlfriend and that, for fear of losing them, he put them in the corner of a clear plastic bag and twisted it shut.

¶ 20    At the close of the evidence, the State sought to introduce, for impeachment purposes, defendant's three prior felony convictions in case No. 13-CR-1345801: (1) armed violence, (2) unlawful possession of a weapon by a felon, and (3) unlawful possession of a controlled substance. Each conviction was entered on October 14, 2014. When the trial court asked if there had been a pretrial motion regarding the admission of the convictions, defense counsel answered no. The State then explained: "There wasn't, Judge. We talked about it, [defense counsel] and I, on Thursday before we addressed the [c]ourt that day." The court responded, "Okay." Defense

counsel objected to the admission of the convictions but reserved argument until the court reviewed the convictions.

¶ 21    After the trial court reviewed the convictions, defense counsel noted that the armed violence conviction had been overturned on appeal. Counsel observed that the remaining convictions were near the 10-year age ceiling under *People v. Montgomery*, 47 Ill. 2d 510, 516 (1971); see Ill. R. Evid. 609(b) (eff. Jan. 1, 2011). Counsel argued that the convictions were more prejudicial than probative. However, counsel did not raise any issue regarding the timing of the State's motion to admit the convictions.

¶ 22    In response, the State acknowledged that the armed violence conviction had been overturned. The State argued for admission of the other two convictions because the case presented "a matter of credibility." "The defendant's credibility [was] paramount in that he [was] the only one that [was] saying he did not have those pills in his pocket." The State argued that the probative value of the convictions far outweighed their prejudicial impact.

¶ 23    The trial court admitted only the drug possession conviction. The court reasoned:

> "I do understand that it's relatively on the high end of admitting a *Montgomery* certified, but it does fall within the ten years. The defendant's credibility is a big issue here in this case.
>
> I find that the probative value outweighs any prejudice about letting it in because it does turn on his credibility. However, I am not going to let in the weapons offense, just the unlawful possession of a controlled substance.
>
> ***
>
> I find that the unlawful use of a weapon by a felon, that's really got two crimes in one. I agree with [defendant] on that.

And I believe that the possession charge goes more towards credibility than that does anyway in compliance with our laws ***."

¶ 24    In the defense's closing argument, counsel began:

"As I told you in opening statements, you were going to hear two versions of what happened on February 27, 2020.  You did hear two versions, however, you are not—job [*sic*] is not to decide who you believe.  Your job is to decide did the State prove [defendant] guilty beyond a reasonable doubt.  ***."

Counsel proceeded to note that defendant and the police officers gave contradictory accounts, creating a seeming "tie."  Counsel then asked whether the "tie" could be broken by considering the "objective evidence."  Reviewing the testimony, counsel asked the jury to consider (1) why the pills were not found during Duffy's search despite it *not* being a "cursory" search as Duffy claimed; (2) why there was no video of Arnold's search of defendant at the police station; and (3) why there was no video or written record of defendant's confession at the police station.  Counsel also remarked that video evidence was "objective evidence *** that can't lie."  Counsel further commented that "[s]omething *** just *** [was not] right" about Arnold's purported discovery of the pills after Duffy failed to find them.  Counsel concluded:

"Video of the search.  Video of the interview.  Written confession.  I don't know why this evidence hasn't been presented to you.  I don't know if they did exist but it just wasn't saved.  I don't know if they never existed.  Maybe it was just a mistake.  Two guys were arrested that day.  Maybe everyone was just confused.

The bottom line is I don't know what happened and neither do you and that's the point.  The point is that to find [defendant] guilty, you have to prove—to find the State has proven their [*sic*] guilty—their burden beyond a reasonable doubt.

To find [defendant] not guilty, you don't have to decide that anyone is lying. You just have to hold the State to their burden. Did they present you with enough evidence to find [defendant] guilty? Make sure that everyone is doing their jobs the right way. That's all we are asking from you. And if you do, I am confident you will find [defendant] not guilty."

¶ 25 In rebuttal, the State argued that on February 27, 2020, the police "did *** their job." The State then reviewed the evidence and urged the jury to "weigh the testimony of everyone who testified," including the officers and defendant. The State then added:

"You have three officers here who have been in policing for nine years or more. They are not going to get up on the stand and lie to you. They are not going to lie about what the defendant told them. They are not going to risk their job and lie about this entire encounter. Three different sworn officers who told you the same thing. Defendant told them it was tramadol."

¶ 26 The trial court instructed the jury that, *inter alia*, (1) closing arguments are not evidence and any statement or argument not based on the evidence should be disregarded and (2) evidence of defendant's prior conviction of an offense could be considered only as it affected his believability as a witness and could not be considered as evidence of guilt of the charged offense.

¶ 27 The jury found defendant guilty. Defendant filed a motion for a judgment notwithstanding the verdict or a new trial. Defendant claimed that, *inter alia*, the trial court erred in admitting the prior conviction for unlawful possession of a controlled substance, because the conviction was more prejudicial than probative. Defendant did not raise any issue about the timing of the State's motion to admit the prior conviction.

¶ 28    The trial court denied the posttrial motion and sentenced defendant to two years in prison. Defendant then filed this timely appeal.

¶ 29                                    II. ANALYSIS

¶ 30    On appeal, defendant contends that (1) the trial court abused its discretion when it granted the State's motion, made only after defendant testified, to admit defendant's prior drug-possession conviction as impeachment; (2) his trial counsel was ineffective for failing to file a motion *in limine* to exclude the prior conviction; and (3) plain error occurred when the State bolstered the credibility of the police witnesses by stating during closing argument that the officers would not risk their jobs by lying about their encounter with defendant.

¶ 31                              A. Defendant's Brief

¶ 32    Initially, we address the State's claim that portions of defendant's statement of facts should be stricken or disregarded because they violate the requirement that the facts be stated "accurately and fairly without argument or comment." Ill. Sup. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). The State claims that defendant overstates the clarity of video 1: he has "improperly injected speculation and his own impressions of [video 1], instead of providing an unbiased recitation of its contents." Defendant, the State continues, "asserts as objective fact [his] own interpretation of the specific individual [pants] pockets [Duffy] attempted to search," *i.e.*, that one pocket was shallower than the other.

¶ 33    We decline to strike any part of defendant's statement of facts. Defendant's interpretation of the depth of the pockets was reasonably based on how much of his hand Duffy inserted into each pocket. In any event, we have reviewed the video independently and will disregard either party's unsupported interpretation.

¶ 34                              B. Prior Conviction

¶ 35    Defendant's first issue concerns the *Montgomery* test.  In *Montgomery*, the supreme court held that, with certain restrictions, the State may introduce a defendant's prior conviction to attack the defendant's credibility.  See *Montgomery*, 47 Ill. 2d at 516-19.  Illinois Rule of Evidence 609(a), (b) (eff. Jan. 1, 2011) codifies the *Montgomery* test:

>    "(a) *General Rule*.  For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the court determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.

>    (b) *Time Limit*.  Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date."

The trial court's admission of a prior conviction under the *Montgomery* test is reviewed for an abuse of discretion.  *People v. Atkinson*, 186 Ill. 2d 450, 456 (1999).

¶ 36    We clarify defendant's precise argument under *Montgomery*.  He does not contend that the trial court abused its discretion in applying the *Montgomery* test.  Instead, he contends that the trial court abused its discretion by allowing the State to make its *Montgomery* motion *after* he testified.  According to defendant, the State denied him the benefit of an informed decision on how to proceed knowing that the State intended to introduce the conviction: he might have decided (1) not to testify at all or (2) to testify and anticipatorily introduce the conviction during his direct examination.

¶ 37    The State argues that defendant has forfeited the timeliness issue.  In his reply brief, defendant submits that he preserved the timeliness issue by objecting below that the conviction did not qualify under *Montgomery*'s substantive criteria.  According to defendant, although his objection did not expressly mention timeliness, that issue was necessarily raised because the supreme court's holding in *Montgomery* contains a timeliness component that binds the State.  For support, defendant notes that the advisory committee that drafted the federal rule of evidence on which *Montgomery* was based listed several factors to consider in weighing the admission of a prior conviction, including "the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." (Internal quotation marks omitted.)  *Montgomery*, 47 Ill. 2d at 518.  In other words, this factor considers "the likelihood that [the] defendant will not testify if the motion *in limine* [to exclude the prior conviction] is denied."  *People v. Ramey*, 70 Ill. App. 3d 327, 332 (1979).  Defendant submits that this factor implies that the State's request to introduce the prior conviction must precede the defendant's testimony.  Defendant further claims that his interpretation of *Montgomery* is confirmed by the supreme court's decisions in *People v. Mullins*, 242 Ill. 2d 1 (2011), and *People v. Patrick*, 233 Ill. 2d 62 (2009).  We disagree.

¶ 38    In *Patrick*, the issue was "whether a trial court may defer ruling on a motion *in limine* to exclude a defendant's prior convictions from use as impeachment until after a defendant's testimony."  *Patrick*, 233 Ill. 2d at 65.  In resolving that issue, the court observed:

> "Nothing in *Montgomery* suggests the proper time for ruling on the admissibility of a prior conviction.  This court has, however, permitted the filing of motions *in limine* to determine whether the State may impeach a testifying defendant with his prior conviction."  *Id.* at 69.

The court held that "a trial court's failure to rule on a motion *in limine* on the admissibility of prior convictions when it has sufficient information to make a ruling constitutes an abuse of discretion." *Id.* at 73. The court reasoned:

> "Obviously, defendants benefit from rulings on the admissibility of their prior convictions made before they decide to testify. First, early rulings provide defendants with the information necessary to make the critical decision whether to testify on their own behalf and to gauge the strength of their testimony. [Citation.] Second, early rulings permit defendants and defense counsel to make reasoned tactical decisions in planning the defense by: (1) informing the jury whether the defendant will testify; (2) portraying the defendant in a light consistent with prior convictions being admitted or not admitted; and (3) anticipatorily disclosing prior convictions during the defendant's direct examination, thereby reducing the prejudicial effect." *Id.* at 70.

¶ 39 Despite recognizing the benefits of "early rulings," the supreme court in *Patrick* did not require that the State's *request* for admission of a prior conviction be brought in a motion *in limine* or, indeed, at any time before the defendant's testimony. The court noted that its prior cases "ha[d] *** permitted"— not "*required*"—the State to bring a motion *in limine* seeking admission of a prior conviction. *Id.* at 69 Defendant thus improperly conflates two issues: (1) when the trial court must rule on the State's request to introduce a prior conviction (addressed in *Patrick*) and (2) when the State must *make* its request to introduce a prior conviction (*not* addressed in *Patrick*).

¶ 40 In *Mullins*, the supreme court held that "when a trial court errs by delaying a ruling on a defendant's motion *in limine* to exclude prior convictions for impeachment until after the defendant testifies, and *** the defendant does in fact testify, that error does not automatically warrant reversal," *i.e.*, the error is not structural. *Mullins*, 242 Ill. 2d at 23 (citing *People v. Averett*,

237 Ill. 2d 1, 14 (2010)). The court identified several factors to consider in applying the harmless error test to the trial court's error in delaying its ruling on a motion *in limine* seeking exclusion of the defendant's prior conviction. *Id.* at 23-25. Those factors are (1) the defendant's need to testify to present a defense, (2) whether the parties mentioned the defendant's prior conviction in closing argument, and (3) the strength of the evidence against the defendant. *Id.*

¶ 41 *Mullins*, like *Patrick*, did not impose a timing requirement on the State's request to introduce a prior conviction. For these reasons, we reject defendant's argument that, by objecting that his prior conviction did not meet *Montgomery*'s substantive criteria, he necessarily *also* objected that the State's request to admit the conviction was untimely because the State did not make its request until after defendant testified. Therefore, because defendant failed to otherwise raise the timeliness issue at trial or in his posttrial motion, the issue is forfeited. See *People v. Harvey*, 211 Ill. 2d 368, 385 (2004).

¶ 42 In his reply brief, defendant asks that we review his claim under the plain error doctrine. See *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000) (a defendant may invoke the plain error doctrine for the first time in his reply brief). Plain error occurs when there is a clear or obvious error and either (1) the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error was so serious that it affected the fairness of the trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Sebby*, 2017 IL 119445, ¶ 48. In either situation, the defendant has the burden of persuasion. *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

¶ 43 The first step in a plain error analysis is determining whether a clear or obvious error occurred. *People v. Johnson*, 2024 IL 130191, ¶ 44. In arguing error, defendant applies the

*Mullins* factors, but they are inapposite. Those factors apply "when a trial court errs by delaying a ruling on a defendant's motion *in limine* to exclude prior convictions for impeachment until after the defendant testifies, and *** the defendant does in fact testify." *Mullins*, 242 Ill. 2d at 23. Here, the *trial court* caused no delay, as it ruled contemporaneously on the State's motion, albeit that motion was made after defendant testified. Defendant has failed to meet his burden of persuasion under the plain error doctrine, because "without error, there can be no plain error." (Internal quotation marks omitted.) *People v. Hood*, 2016 IL 118581, ¶ 18.

¶ 44 Defendant also argues that his trial counsel was ineffective for failing to file a motion *in limine* to exclude his prior convictions.

¶ 45 A defendant asserting ineffective assistance of counsel must show that (1) his attorney's performance fell below an objective standard of reasonableness and (2) his attorney's performance prejudiced him in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *People v. Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A reasonable probability is one that undermines confidence in the outcome of the trial. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 84. Because a defendant must establish both prongs of this test, his failure to establish either is fatal to his claim. *Jackson*, 2020 IL 124112, ¶ 90. If an ineffectiveness claim may be disposed of for lack of sufficient prejudice, a court need not consider the quality of the attorney's performance. *Strickland*, 466 U.S. at 697.

¶ 46 Here again, defendant does not argue that his prior conviction of unlawful possession of a controlled substance was inadmissible under the *Montgomery* test. Rather, he asserts that, if his counsel had filed a motion *in limine* to exclude that conviction, the trial court would have been required under *Patrick* to issue its ruling before defendant testified, allowing him to make an

informed decision whether to testify. He explains that, had he known how the court would rule, "[he] may have chosen not to testify, or he could have introduced the conviction himself on direct examination, avoiding the 'gotcha' moment at the end of trial where the State introduced his prior conviction with zero context."

¶ 47    Much of what defendant says on the matter of prejudice is speculative. Still, we can address the core issue: did the prior-conviction evidence contribute to defendant's guilty verdict such that a reasonable probability exists that the jury would have acquitted him without that evidence? In our view, no. The court admitted a single conviction—the less potentially prejudicial of the two—that was almost nine years old. The impact of the conviction was mitigated in three ways: (1) the trial court gave a limiting instruction (see *Atkinson*, 186 Ill. 2d at 463), which we presume the jury followed (see *People v. Taylor*, 166 Ill. 2d 414, 438 (1995)); (2) the conviction was entered into evidence simply through a certified copy, without any testimony concerning it; and (3) the State did not mention the conviction in its closing argument.

¶ 48    Additionally, the jury had ample reason to reject defendant's version of events, irrespective of the prior conviction. The State presented unequivocal testimony from Arnold that he found tramadol while searching defendant at the police station. Arnold, Duffy, and Lara all testified that defendant confessed to possessing tramadol. Defendant contradicted their accounts of the search and his confession. He asserts that his account was corroborated by video 1, which, he claims, "showed Duffy search [defendant's] coin pocket and find no contraband." However, the video does not clearly show how thoroughly Duffy searched defendant's pants pockets or even that Duffy searched *all* of defendant's pants pockets. Therefore, it did not corroborate defendant's self-serving testimony. Accordingly, comparing the State's evidence to defendant's testimony, it was not reasonably probable that the jury would have reached a different result had it not known about

defendant's prior conviction. Thus, defendant has not established the prejudice necessary to support his claim of ineffective assistance of counsel. Because defendant has failed to establish prejudice, we reject his claim without examining *Strickland*'s performance prong. See *Strickland*, 466 U.S. at 697.

¶ 49                    C. Prosecutorial Comment

¶ 50    Defendant argues that error arose when the State argued in closing that the police witnesses would not be willing to risk their jobs by testifying falsely about their encounter with defendant.

¶ 51    Defendant acknowledges that he forfeited this contention by failing to object during closing argument. He invokes the plain error doctrine, but we agree with the State that any error was invited and therefore cannot amount to plain error. See *People v. Quezada*, 2024 IL 128805, ¶ 59.

¶ 52    In claiming that the State exceeded the bounds of proper argument, defendant relies on *People v. Adams*, 2012 IL 111168.

¶ 53    In *Adams*, the defendant was charged with unlawful possession of a controlled substance based on the contents of a plastic bag that two police officers (Sergeant Boers and Deputy Schumacher) testified was recovered from the defendant's clothing during a search following his arrest for driving with a suspended license. *Id.* ¶¶ 3-5, 12. The defendant testified that, during the search, Boers pointed to a piece of plastic on the ground and asked " '[W]hat is this[?]' " *Id.* ¶ 8. The defendant continued: " 'So I said, I don't know. He said, you're not going to say I dropped it. I said, you know I didn't drop it.' " *Id.* The defendant denied seeing the piece of plastic before the search. *Id.* During its initial closing argument, the prosecutor said to the jury:

" 'What also doesn't make sense is that *** Boers would plant these drugs on the defendant. We are talking about 0.8 grams of cocaine. If you believe what the defendant

is saying, then you also have to believe that *** Boers is risking his credibility, his job, and his freedom over 0.8 grams of cocaine.

And not only is *** Boers doing that, but *** Schumacher is doing that as well. He's also risking his life—his job and his freedom and his reputation over 0.8 grams of cocaine.' " *Id.* ¶ 16.

In rebuttal, the prosecutor argued that "believing [the] defendant required the jury to believe that 'these officers are risking their jobs for this, over 0.8 grams of cocaine.' " *Id.*

¶ 54 The supreme court held that the prosecutor's comments were improper because (1) there was no trial evidence from which it could be inferred that the officers would risk their careers if they testified falsely and (2) the prosecutor implied that the officers were more credible solely because they were police officers, which violated the principle that a prosecutor may not argue that a witness is more credible because of his status as a police officer. *Id.* ¶ 20.

¶ 55 Here, the prosecutor said in rebuttal argument:

"You have three officers here who have been in policing for nine years or more. They are not going to get up on the stand and lie to you. They are not going to lie about what the defendant told them. They are not going to risk their job and lie about this entire encounter. Three different sworn officers who told you the same thing. Defendant told them it was tramadol."

¶ 56 These comments are similar to those in *Adams*. Also, here, as in *Adams*, there was no evidence in the record that the officers would risk their careers by testifying falsely. However, material contextual differences exist between the statements here and those in *Adams*. In evaluating a challenge to the State's arguments, the court must also consider the defense's arguments. "[T]he prosecutor may respond to comments by defense counsel which clearly invite

a response [citation], and *** comments made in closing argument must be considered in the proper context by examining the entire closing arguments of both the State and the defendant." *People v. Kliner*, 185 Ill. 2d 81, 154 (1998). "[O]therwise improper argument by the State will not be considered error when invited by the defendant's argument." *People v. Kirchner*, 194 Ill. 2d 502, 553 (2000). Notably, while the *Adams* court overruled a line of cases holding that such statements as those challenged in *Adams* fall within the wide latitude of closing argument (see *Adams*, 2012 IL 111168, ¶ 19 (citing *People v. Bennett*, 304 Ill. App. 3d 69, 71-72 (1999), as an example of a decision finding no error in such statements)), the court implicitly left in place a line of cases applying the doctrine of invited error to such statements. One example is *People v. Spain*, 285 Ill. App. 3d 228, 239 (1996), where the court held:

> "[The defendant] also specifically contends it was error for the State to tell the jury that the police officers who testified would not put their careers and the security of their families on the line by conspiring to frame [the defendant] for murder. In support, [the defendant] cites *People v. Rivera*, 235 Ill. App. 3d 536 (1992), which held that these types of remarks generally are error. However, we find no error in the present case because the State's remarks were invited by [the defendant's] argument that the police framed him."

¶ 57    In *Adams*, there was no issue of invited error. In contrast, the State argues here that the comments at issue were invited, and we agree. Defense counsel began and ended her closing argument with the statement that the jury did not need to decide who was telling the truth and who was lying. In between those remarks, however, counsel asked a series of questions with insinuated answers: "Why isn't the body cam[era] on for a conversation that does yield evidence?" "The police are looking for information, so why weren't they recording this conversation?" "If he is confessing to a crime that might be going to trial as you are all here today, he could have—why

wouldn't they have him write it down?" Counsel proceeded to comment that "[s]omething \*\*\* just \*\*\* [was not] right" about Arnold's claim to have found tramadol on defendant after Duffy failed to find it. Counsel also remarked that video evidence was "evidence that can't *lie*." (Emphasis added.) About the lack of video evidence or a written confession, counsel said, "*Maybe* it was just a mistake" and "*Maybe* everyone was just confused." (Emphasis added.) The overall thrust of these questions and remarks was that the police officers were possibly negligent but more likely nefarious. The prosecutor responded proportionately with the commonsense observation that the officers would not risk their careers to frame defendant.

¶ 58 Because an invited error cannot amount to plain error (see *Quezada*, 2024 IL 128805, ¶ 59), we uphold defendant's forfeiture of his claim of improper prosecutorial argument.

¶ 59                                    III. CONCLUSION

¶ 60 For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 61 Affirmed.